# Pennsylvania Liquor Control Board, Plaintiff, *v.* City of Philadelphia, Defendant.

Argued December 2, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., ROGERS and BLATT. Judge MENCER did not participate.

*J. Leonard Langan,* Assistant Attorney General, with him *Harry Bowytz,* Chief Counsel, and *Israel Packel,* Attorney General, for plaintiff.

*James M. Penny, Jr.,* Assistant City Solicitor, with him *Claudia Kapustin,* Assistant City Solicitor, *Augustus L. Pasquarella,* Assistant City Solicitor, *Raymond Kitty,* Deputy City Solicitor, and *Sheldon L. Albert,* City Solicitor, for defendant.

OPINION BY JUDGE BLATT, March 12, 1975:

On June 13, 1967, the basement of Pennsylvania Liquor Store No. 5126 located at 1801 West Girard Avenue in Philadelphia was flooded as the result of a water main break. A large quantity of liquor was destroyed along with paper bags and fuel which were stored on the premises, resulting in a loss estimated at $24,813.37.

On March 26, 1973 the Pennsylvania Liquor Control Board (LCB) filed a complaint in trespass in this Court against the City of Philadelphia (City) asserting that the flooding was due to the City's negligence and seeking recovery for the damages. The City filed an answer denying all averments of the complaint, and, on May 14, 1974 attorneys for both parties filed a stipulation of facts, among which was the following:

> "7. The City of Philadelphia had no notice, express or implied, of the conditions which caused the break in the water main."

On August 16, 1974 the City filed a motion for summary judgment under Pa. R.C.P. No. 1035, and this motion was submitted to this Court for consideration on briefs on December 2, 1974.

The liability of a water distributor in Pennsylvania for damages which result from water escaping from a

broken main is determined generally by the rules governing negligence. *Morgan v. Duquesne Borough,* 29 Pa. Superior Ct. 100 (1905); *See Philadelphia Ritz Carlton Co. v. Philadelphia,* 282 Pa. 301, 127 A.843 (1925). The plaintiff may, for instance, recover if damages have resulted from the defendant's faulty or negligent construction of the line, from the defendant's failure to repair a leaking line after actual or constructive notice, or from the defendant's failure to conduct reasonably careful inspections from time to time. *Morgan, supra.*

The City argues here that Stipulation No. 7 forecloses the LCB from recovery in this case because, without actual or implied notice, the City cannot be held liable.

"Implied notice," the term used in the stipulation, is not a term customarily used by the courts of Pennsylvania in this context, but they have used a similar term, "constructive notice," and have indicated that it includes that which is apparent upon reasonable inspection. *Good v. Philadelphia,* 335 Pa. 13, 6 A.2d 101 (1939).

In *Morgan, supra,* our Superior Court apparently saw a distinction between, on the one hand, what a defendant constructively knows and, on the other hand, what a defendant has failed to learn by virture of its failure to make an inspection. "The borough cannot defend as a matter of law because its officials had neither actual nor constructive notice. There may be a recovery on the ground of the negligence of the borough officials in not making reasonably careful inspection of its water lines from time to time." *Morgan, supra,* at 105. And, just as it is apparent that the Superior Court in that case was placing a somewhat narrow meaning upon the term "constructive notice," so that such notice was not premised on the defendant's failure to inspect, we must place a similarly narrow construction upon the term "implied notice" as used in the stipulation here.

Summary judgment, of course, should not be entered unless a case is clear and free from doubt, with the

record viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Davis v. Pennzoil Company*, 438 Pa. 194, 264 A.2d 597 (1970). Stipulation No. 7 may be interpreted as not precluding the City's liability for negligent failure to inspect its lines or for negligent construction of the lines, and so we do not believe that it warrants the entry of summary judgment. Moreover, Stipulation No. 7 appears on the record as a "Stipulation of *Fact*" (emphasis added). Whether or not the City actually received constructive. or implied notice of a certain condition, however, is clearly a question of law, and there are no facts contained within the stipulation to support the legal conclusion stated therein, i.e. that the City had no implied notice.

The principal legal theory which the City originally advanced in support of its motion for summary judgment was that the doctrine of exclusive control is not available to the plaintiff in this case. However, the Supreme Court of Pennsylvania abrogated that doctrine in *Gilbert v. Korvette, Inc.,* —— Pa. ——, 327 A.2d 94 (1974), and adopted in its place the provisions of the Restatement (Second) of Torts §328D (1965), which are as follows:

"§328D Res Ipsa Loquitur

"(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

"(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

"(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached."

The court emphasized that Section 328D of the Restatement should be viewed simply as a method of circumstantially proving facts in issue, and that circumstantial evidence could create only a permissible inference of fault in negligence cases and could not result in a shifting of the burden of proof. Clearly, LCB as the plaintiff in this case may be able to avail itself of Section 328D of the Restatement to establish such a permissible inference if, during the course of the trial, it satisfies the three criteria enumerated under Subsection (1).

It is specifically stated in Comment (c) to Restatement Section 328D that it is permissible to conclude that the escape of water from a main does not usually happen unless someone has been negligent. We do believe, however, that both sides should be given an opportunity at trial to present evidence on the question of whether or not an event such as the one which occurred here ordinarily would occur in the absence of negligence.[1]

As for the second requirement under Section 328D, it will be incumbent upon the plaintiff at trial to show that other possible causes can be eliminated. "Again, however, the plaintiff is not required to exclude all other possible conclusions beyond a reasonable doubt, and it is enough that he makes out a case from which the jury may reasonably conclude that the negligence was, more probably than not, that of the defendant." Restatement Section 328D, Comment (f).

The third requirement, of course, i.e. that the negligence be within the scope of the defendant's duty to the plaintiff, must be satisfied at trial as well.

---

1. For a general discussion of the applicability of the res ipsa loquitur doctrine to water main breaks, see the cases collected at 20 A.L.R. 3rd 1294 at 1310-1316.

We would emphasize that an inference of negligence may be drawn only if the three conditions listed under Subsection (1) are established, and the plaintiff will, of course, have to establish them. Moreover, even if they are established, it will still remain for the fact finder to determine whether or not the inference of negligence should be drawn. The burden of proof will not shift to the defendant.

Finally, we must point out that, even if the doctrine of res ipsa loquitur, as spelled out in Section 328D of the Restatement, were unavailable to the LCB in this case, the City would still not be entitled to summary judgment. "Res ipsa loquitur is neither a rule of procedure nor one of substantive tort law. It is only a shorthand expression for circumstantial proof of negligence—a rule of evidence." *Gilbert, supra* at ..., 327 A.2d at 99. Nothing would prevent the LCB from establishing the City's alleged negligence here by direct evidence.[2]

For the foregoing reasons, we, therefore, issue the following

ORDER

AND NOW, 12th day of March, 1975, the motion for summary judgment is hereby denied.

---

2. The probable purpose of the stipulation, earlier referred to, was to place the issue of the applicability of the exclusive control doctrine, now Section 328D, before this Court on a motion for summary judgment. The stipulation as to notice, however, relates to the question of whether the City breached its duty to the LCB, not to the manner by which the LCB may prove its case.